OPINION
{¶ 1} This appeal arises out of a forcible entry and detainer action (i.e., eviction). The tenant, Joel Kalson ("appellant"), appeals from the trial court's entry of default judgment in favor of the landlord, William J. Dobbins ("appellee"). Appellant claims he did not receive notice of the eviction hearing, although he does admit that he "was legally served with process," as defined by Ohio's forcible entry and detainer statute. He urges this court, however, to hold the statute unconstitutional because its service provisions conflict with those in the civil rules. It is true that the civil rules generally dictate procedure *Page 2 
for service of process, however, in enacting the civil rules, the Supreme Court of Ohio specifically exempted forcible entry and detainer actions from their purview. Therefore, the statute in question does not conflict with the civil rules. We also find that appellant's constitutional challenge was waived because he failed to raise that issue with the trial court.
 {¶ 2} Appellant presents a single assignment of error for our consideration:
 The trial court erred in ruling that Appellant was legally served with process.
 {¶ 3} Appellee contends that appellant's arguments are frivolous attempts to delay judgment and set-out, and has filed a motion for damages, in accordance with App.R. 23. We will consider the motion separately.
 {¶ 4} Appellant entered into a one-year residential lease with appellee on August 20, 2006, for property located at 2539 ½ North Fourth Street. The lease was scheduled to terminate on August 31, 2007. Although the lease agreement included an option to renew, a little more than a month before the end of the lease term, the landlord telephoned appellant to notify him that he would not be renewing the lease, and that appellant should plan on vacating the premises at the end of the lease term. The landlord followed up the telephone call with a letter, also stating that he was terminating the lease. Believing that he had always been a good tenant, appellant was surprised by the landlord's decision not to renew the lease, and he was concerned about finding another place to live that was affordable, large enough to accommodate his three daughters and welcome his dog. He therefore pleaded with the landlord for a time extension. The landlord apparently sympathized with appellant because he offered to write a letter of *Page 3 
reference on appellant's behalf. Nothing in the record suggests that appellee agreed to extend the lease. When appellant had not moved out on August 31, appellee served him with an eviction notice — to vacate the premises within five days, as required by R.C. 1923.02 et seq. The trial court found that this notice satisfied the requirements in R.C. 1923.06
(a.k.a the "three-day notice").
 {¶ 5} On September 5, 2007, appellant was still living in the premises, and having waited more than the required three days, appellee filed a complaint in municipal court to have appellant evicted. Appellee told appellant about the complaint, and said that there would be a hearing "sometime at the end of the month." (Appellant's brief, at 2.) The matter was scheduled for a hearing on September 26, and copies of the summons and complaint were sent to appellant by certified mail, ordinary mail, and by personal service (bailiff). The certified letter was returned to the clerk of courts as "unclaimed," however, the letter sent by ordinary mail was not returned. The record shows that the bailiff posted a copy of the summons and complaint on appellant's door on September 10. Appellant now claims that: (1) the postal service did not notify him that they were attempting to deliver certified mail to him; (2) he did not receive the summons sent by ordinary mail; and (3) he did not see the summons posted on his door (or, that "if he did, [he] did not realize that it was a notice from the court"). (Appellant's brief, at 2.)
 {¶ 6} When appellant failed to appear at the eviction hearing September 26, the magistrate entered a default judgment in favor of the landlord. Coincidentally, appellant contacted the clerk's office the following day to inquire about the hearing date that had just passed. After finding out that the court had already entered a default judgment against him, appellant drafted an objection to the magistrate's decision, in his own hand: *Page 4 
"My objection is based on not having receiving what is legally called`good service.'" (Record, at 9.) (Emphasis added.) He filed the objection, pro se, on September 28, 2007. The objection did not specifically raise a constitutional challenge to service. A municipal court judge held a hearing on the objection on October 9, and found that appellant was properly served with process, and overruled the objection. Appellant posted bond and retained counsel, and this appeal ensued.
 {¶ 7} Excluding plain error, litigants cannot assign as error to this court a trial court's adoption of any magistrate's factual finding or legal conclusion unless the litigant properly objected to that finding or conclusion in the trial court. Civ.R. 53(D)(3)(b)(iii); see, e.g.,Watley v. Dept. of Rehab. Corr., Franklin App. No. 06AP-1128,2007-Ohio-1841, at ¶ 8; see, also, State ex rel. Wilson v. Indus.Comm., 100 Ohio St.3d 23, 2003-Ohio-4832, at ¶ 4 (per curiam). Furthermore, objections must state all grounds for objection with particularity. Civ.R. 53(D)(3)(b)(ii). The plain-error doctrine is applied almost exclusively in criminal cases, however, it may be used in civil matters as well, provided its application is necessary "to prevent a manifest miscarriage of justice." Reichert v. Ingersoll (1985),18 Ohio St.3d 220, 223. Plain error is more than mere prejudice against a party; rather, it is error that has a materially adverse effect on the character and public confidence in the judicial process. Id.; Berge v.Columbus Community Cable Access (1999), 136 Ohio App.3d 281, 315-316. Appellant has not alleged that the trial court committed plain error; thus, to the extent he failed to make his constitutional argument in the trial court, the argument is not properly before this court.
 {¶ 8} Assuming that appellant had properly objected to the constitutionality of R.C. 1923.06 in the trial court, the crux of his argument that, despite the fact that he was *Page 5 
legally served, as defined by the statute, he did not actually know about the hearing and, as such, he was denied a meaningful opportunity to be heard. He argues that R.C. 1923.06 is unconstitutional because it conflicts with Civ.R. 4 to the extent that R.C. 1923.06 allows service by ordinary mail, and service by posting (a.k.a. "doorknob service"). We disagree.
 {¶ 9} Service of process is a fundamental component to due process of law. See, e.g., Mullane v. Central Hanover Bank Trust Co. (1950),339 U.S. 306, 314, 70 S.Ct. 652. The central theme being that before any individual can be stripped of a protected personal or property right, that individual must be given adequate notice and a meaningful opportunity to be heard. Id.; see, also, Hagar v. Reclamation Dist. No.108 (1884), 111 U.S. 701, 708, 4 S.Ct. 663; Caldwell v. Village ofCarthage (1892), 49 Ohio St. 334, 348.
 {¶ 10} Ordinarily, Civ.R. 4 governs service of process in all civil actions, however, Civ.R. 1(C) specifically exempts forcible entry and detainer actions from their purview. See, e.g., Miele v. Ribovich
(2000), 90 Ohio St.3d 439, 442; Civ.R. 1(C). ("These rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * in forcible entry and detainer.") The rationale behind excluding eviction proceedings from the civil rules is that forcible entry and detainer is a special, statutory remedy, intended to be a summary proceeding, and its purpose would be frustrated by strict application of the civil rules. Id. at 441. ("Given its summary nature, the drafters of the [civil rules] were careful to avoid encrusting this special remedy with time consuming procedure tending to destroy its efficacy.") Thus, the rules governing service of process *Page 6 
in forcible entry and detainer actions are not set forth in the civil rules; rather, they are provided within the statute granting the cause of action.
 {¶ 11} Appellant also argues that R.C. 1923.06 is unconstitutional because the Ohio Constitution vests the Supreme Court of Ohio with exclusive authority to "prescribe rules governing practice and procedure in all courts of the state," and any law that prescribes otherwise shall have no effect. Section 5(B), Article IV, Ohio Constitution. Because the Supreme Court of Ohio did not enact R.C. 1923.06, and because it differs slightly from Civ.R. 4 to the extent it allows service by posting, appellant argues that the statute should be invalid. The argument ultimately fails because of the fact that the Supreme Court of Ohio specifically exempted forcible entry and detainer from the civil rules. In other words, the General Assembly did not usurp this power from the Supreme Court — the court, in promulgating the civil rules, decided that forcible entry and detainer was a special matter in which it was more appropriate to have its procedure dictated by the legislature.
 {¶ 12} Appellant also argues that service of process in this case, violates the U.S. Supreme Court's ruling in Greene v. Lindsey (1982),456 U.S. 444, 453, 102 S.Ct. 1874. We disagree. In Greene, the court held that doorknob service violates due process when it is the sole means of perfecting service. See id. The court did not hold that doorknob service was categorically unconstitutional. The facts inGreene demonstrated that the Kentucky process servers at issue "were well aware" that notices posted on apartment doors in the area in question "were `not infrequently' removed by children or other tenants before they could have their intended effect." Id. Under those circumstances, the court found that giving notice only by posting on an apartment door could not be considered *Page 7 
reliable. Id. at 453-454. By contrast, the court reasoned that the U.S. Postal Service is an "efficient and inexpensive means of communication, upon which prudent men will ordinarily rely in the conduct of important affairs." Id. at 455 (quoting Mullane, at 319). Had the clerk of courts in Greene attempted mail service in addition to doorknob service, the outcome most certainly would have been different.
 {¶ 13} This case does not resemble Greene because, here, the clerk did attempt service by mail. The clerk of courts attempted service by certified mail, which was returned as unclaimed, and also by ordinary mail, which was not returned. Where there is proof that ordinary mail was sent, and properly addressed to the recipient, the law presumes it was received, so long as it was not returned to the sender. SeeGrant v. Ivy (1980), 69 Ohio App.2d 40, 42-43. The presumption of delivery may be rebutted by evidence that the addressee never resided or received mail at the address where the mail service was addressed, but counsel for appellant has not raised that argument. Instead, counsel generally avers, "Appellant lives in a rental area where ordinary mail is frequently not delivered to the right address." (Appellant's brief, at 7.) Thus, the only similarity between this case and Greene is that the clerk attempted personal service, but settled for posting the summons and complaint on appellant's door. Given that there were three separate attempts at service, and that appellant was admittedly expecting a notice from the court, it is difficult to believe that he had no idea that he had been served. If appellant was not home when the postman attempted to deliver the certified copy of the summons, the postman would have left a notice in his mailbox apprising him that he was the recipient of certified mail, and giving the location of the post office where the mail could be claimed. Then there is the copy of the summons that was sent to appellant's apartment *Page 8 
via ordinary mail. Though we cannot know for certain that the postman actually delivered the summons to appellant's mailbox, we know for certain that the letter was not returned to the clerk of courts. We therefore presume that appellant received it.
 {¶ 14} Counsel for appellant then argues that the clerk's attempted service by ordinary mail was invalid because it was attempted simultaneously with the certified mail service, citing a non-binding case from the Ninth District Court of Appeals, Akron MetropolitanHousing Auth. v. Thompson (July 25, 1990), Summit App. No. 14428. This case, however, is not supported by authority, binding or otherwise; moreover, it is merely semantics to engage in a discussion of which letter was sent first. All that is important is whether the letter was sent, properly addressed, and reasonably calculated to inform appellant that there were legal proceedings pending against him.
 {¶ 15} For the sake of argument, even if we were to assume that none of the three attempts at service were actually perfected, appellant has not been prejudiced here. More than four months have passed since the lease expired, yet, he continues to reside in appellee's apartment. Appellant claimed in July that he needed a little more time to find comparable living arrangements. Not then, nor now does appellant claim a legal right to occupy the premises. Therefore, it should not be a burden upon appellant to move out now. We cannot know why appellee chose not to re-let the premises to appellant, but it was appellee's prerogative to do so. Appellant wanted more time, and he got more time.
 {¶ 16} For these reasons, appellant's argument that R.C. 1923.06 is unconstitutional is not well-taken. We, therefore, overrule the sole assignment of error, and affirm the judgment of the Franklin County Municipal Court. *Page 9 
 {¶ 17} Turning to appellee's motion for damages, App.R. 23 provides that if any court of appeals determines that an appeal is frivolous, the court may order an appellant to pay reasonable expenses, litigation costs, and attorney's fees. A "frivolous" appeal is essentially one that presents no reasonable question for review. Talbott v. Fountas (1984),16 Ohio App.3d 226; cf. Jackson v. City of Columbus,156 Ohio App.3d 114, 119, 2004-Ohio-546, at ¶ 18. Having found appellant's arguments untenable, we sustain appellees' motion. Accordingly, we remand the matter to a magistrate of this court for a determination of appellee's damages.
Motion sustained; judgment affirmed.
 KLATT and BRYANT, JJ., concur.
BRYANT, J., retired of the Third Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution. *Page 1